UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRILYN MCQUEEN,

        Plaintiff,

vs.

        Case No. 05-CV-73925
        HON. GEORGE CARAM STEEH

DAIMLERCHRYSLER CORPORATION,

        Defendant.

_____/

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (#10)

Defendant DaimlerChrysler ("D/C") moves for summary judgment of plaintiff Terrilyn McQueen's claims that she was discharged in violation of Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"), M.C.L. §§ 37.1201, et seq., and the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, et seq.. A hearing on the motion was held on June 20, 2006. For the reasons set forth below, D/C's motion for summary judgment will be GRANTED, IN PART, as to McQueen's PWDCRA claim. D/C's motion for summary judgment will be DENIED as to McQueen's FMLA claims.

**I. Background**

McQueen filed a complaint on October 13, 2005 alleging she was discharged from her employment with D/C effective January 1, 2004 for taking FMLA leave and because of her physical condition of cellulitus. According to the record, McQueen worked as an hourly assembly worker at D/C's Detroit Axle Plant. McQueen arrived at work on November 12,

2003 at 5:30 a.m., and reported to the medical department around 10:00 a.m. with symptoms of vomiting, chills, and legs "hurting real bad." McQueen January 10, 2005 Transcript, at 65. McQueen received a medical pass to leave work, and went to nearby Beaumont Hospital where she was admitted and treated with intravenous antibiotics for cellulitus, a bacterial infection. Id. at 67-68. McQueen called a D/C "1-800" phone number from the Hospital the next day, November 13, 2003, did not at the time file a claim for Sickness and Accident ("S&A") benefits, but did write-down a second phone number to call in the future to make an S&A benefit claim. Id. at 69. McQueen testified she did not immediately make a benefit claim because she did not know whether she would be off for the minimum qualifying period of 5 days, although she did input through her phone call an expected return-to-work date of December 1, 2003. Id. at 69, 79. McQueen testified that she knew at the time how to file a formal FMLA claim with D/C's Human Resources ("HR") Program Administrator Toma LaGarde because she had filed formal FMLA leave requests with LaGarde in the past. Id. at 70. Upon her November 16, 2003 release from the Hospital, a Hospital physician recommended that McQueen continue treating at home until November 26, 2003, and that McQueen follow-up with her own treating physician Dr. Rosenberg to determine when McQueen would be ready to return to work. Id. at 71, 77. McQueen went to Dr. Rosenberg for treatment sometime between November 18 and 20, 2003. Id. at 74-75. McQueen was initially given a report to work date of December 1, 2003 by non-party ESIS, D/C's third-party S&A benefits administrator.

  McQueen received a December 12, 2003 letter from D/C HR Director LaGarde:

You have been absent from work since 11/12/2003. The reason for the absence from work:

> ■ was established for a certain period, but has not been currently justified.
>
> ☐ has not been established at this time.
>
> Accordingly, you are to report to the Plant Employment Office on or before 12/19/2003, unless on or before this date the Plant Employment Office receives satisfactory evidence as to the reason for your absence.
>
> If you do not report or submit such evidence as directed above or if you do not promptly notify the Plant Employment Office that for a reason beyond your control, which you must satisfactorily substantiate, you were unable to comply with either of those instructions, your seniority will be terminated.

At some point, McQueen called ESIS a second time and reported a return to work date of January 6, 2004 allegedly based on Dr. Rosenberg's continuing assessment. Id. at 76, 80.

As a result, McQueen received a December 19, 2003 letter from ESIS:

> This letter is in reference to your Sickness and Accident disability claim.
>
> I am pleased to inform you that your disability claim has been processed for benefits. Currently, your attending physician is certifying your disability through 12/21/2003 and benefits will be paid through that date provided no additional information is received which may alter this determination.
>
> You are expected to return to work on the first normally scheduled workday following the benefit expiration date noted above. If you recover prior to that date, you should immediately return to work. If you are unable to return on the scheduled date, your treating physician must call ESIS* to certify your continued disability. If your physician fails to request this extension of disability prior to your expected return to work date, future benefits may be delayed or denied. . . . .

It appears undisputed that the Detroit Axle Plant was shut down for the Christmas Holidays from December 22, 2003 through January 4, 2004, making the first normally scheduled workday January 5, 2004.

McQueen admitted receiving HR Director LaGarde's December 12, 1003 letter, and admitted she did not call or go to the Plant Employment Office as directed in the letter. Id. at 81-82.

> A. [by McQueen] I choose to follow the bottom to make sure you substantiate your information, because what typically happens, the S&A company, when your doctor reports, is that's how they establish your medical. So I assumed they hadn't received the information from my doctor through ESIS.

Id. at 82. When asked again why she did not attempt to contact anyone at the Plant Employment Office, McQueen responded: "It's not how we report on medicals." Id. at 85. When McQueen attempted to return to work on January 5, 2004, she was terminated for failing to submit satisfactory evidence of her absence from work as requested in LaGarde's December 12, 2003 letter. Id. at 72. D/C now moves for summary judgment of McQueen's claims that she was terminated in violation of the PWDCRA and FMLA.

## II. Standard of Review

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences arising therefrom must be construed in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001). If the movant establishes by use of the material specified in Rule 56(c) that there

is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000).  Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence. Anderson, 477 U.S. at 252.  Rather, there must be evidence on which a jury could reasonably find for the non-movant.  McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

### III. PWDCRA Claim

D/C argues McQueen's state law PWDCRA claim is subject to dismissal pursuant to a contractual six-month limitations period.  See Mayes v. Daimler Chrysler, No. 05-70249, 2005 WL 2562780 (E.D. Mich. Oct. 12, 2005) (citing Rory v. Continental Ins. Co., 473 Mich. 457, 703 N.W.2d 23 (2005) and Clark v. Daimler Chrysler, 268 Mich. App. 138, 706 N.W.2d 471 (2005) in upholding six-month contractual limitations period as to Michigan Elliott-Larsen Civil Rights Act claims).  McQueen responds that it became apparent following discovery that she should focus on her FMLA claims, and agrees to dismiss her PWDCRA claim, but without prejudice.  McQueen does not dispute that her PWDCRA claim is subject to a six-month contractual limitations period.  It is also beyond dispute that McQueen did not file this lawsuit within six months of her January 5, 2004 notice of termination.  D/C is entitled to summary judgment of McQueen's PWDCRA claim with prejudice as a matter of law.  Mayes, 2005 WL 2562780 at *7; Amway, 323 F.3d at 390.

### IV. FMLA Claims

D/C argues it is entitled to summary judgment of McQueen's FMLA claims because

McQueen did not notify D/C that she was requesting FMLA leave.  D/C asserts that any notice S&A benefits administrator ESIS received that McQueen was seeking paid medical leave did not constitute notice to D/C that McQueen was seeking unpaid FMLA leave.  D/C proffers the affidavit of D/C Regional Disability Manager Neil Levins, who attests that ESIS had no authority for processing FMLA leave requests, that ESIS did not communicate to D/C any information "pertaining to an employee's request for FMLA leave," that ESIS does not notify employees of the need to provide information to support a request for FMLA leave, and that ESIS does not require proof of a "serious medical condition" to process an employee's claim for S&A benefits.  Levins June 7, 2006 Affidavit, ¶ 3-4, at 2.  D/C stresses that FMLA notice must be given to the employer, and that paid leave cannot be equated with unpaid FMLA leave.  D/C also cites Henegar v. Daimler-Chrysler Corp., 280 F.Supp.2d 680 (E.D. Mich. 2003) for the proposition that using an automated telephone system to notify an employer that the employee is "ill" is inadequate notice that the employee is suffering from an FMLA qualifying "serious medical condition."  D/C further argues that LaGarde's December 12, 2003 letter constituted a request for FMLA leave certification as authorized under 29 U.S.C. § 2613(b), and that D/C lawfully terminated McQueen when she did not respond as directed in the letter by reporting to, or forwarding satisfactory evidence to, the Plant Employment Office.  D/C asserts that McQueen cannot prove that she intended to seek FMLA leave when she called ESIS.

    McQueen is alleging both an FMLA interference claim and retaliation claim.  To prevail on an FMLA interference claim, the plaintiff must prove: (1) she was an FMLA eligible employee; (2) the defendant is an FMLA employer; (3) the employee was entitled to FMLA leave; (4) the employee gave the employer notice of the intention to take leave,

6

and; (5) the employer denied the employee FMLA benefits to which she was entitled. Cavin v. Honda of America Mfg., 346 F.3d 713, 719 (6th Cir. 2003). An actionable FMLA retaliatory discharge claim requires proof that: (1) the employee availed herself of an FMLA protected right; (2) she was discharged, and; (3) a causal connection between the employee's protected activity and the discharge decision. Skrjanc v. Great Lakes Power Service Co., 272 F.3d 309, 315 (6th Cir. 2001) (citing Hodgens v. General Dynamics Corp., 144 F.3d 151, 160 (1st Cir. 1998)). To initially invoke FMLA protection, the employee must first request leave and give the employer notice that she is requesting leave for a "serious medical condition" that renders her unable to perform her job duties. Brenneman v. Medcentral Health System, 366 F.3d 412, 421 (6th Cir. 2004) (citing Brohm v. JH Props., Inc., 149 F.3d 517, 523 (6th Cir. 1998)).

> . . . [T]he eligible employee need not expressly mention the FMLA as the source of his right to request such leave. Hammon [v. DHL Airways, Inc., 165 F.3d 441, 451 (6th Cir. 1999)]. Rather, *the critical test for substantively-sufficient notice is whether the information that the employee conveyed to the employer was reasonably adequate to apprise the employer of the employee's request to take leave for a serious health condition that rendered him unable to perform his job.* Brohm, 149 F.3d at 523; Cavin [346 F.3d at 725] (holding that the plaintiff, as a matter of law, had sufficiently notified his employer during his employment that his request for unforeseeable leave was for a FMLA-qualifying serious health condition when he informed his employer that he had been at the hospital and was unable to work due to an injury from a motorcycle accident).
>
> \*   \*   \*
>
> Once an employer receives sufficient notice that the eligible employee is requesting leave for a FMLA-qualifying reason, the employer bears the burden to gather any additional information necessary for the leave to fall within the FMLA. Hammon, 165 F.3d at 450. An employer may require the eligible employee to provide, in a timely manner, certification by a health care provider. 29 U.S.C. § 2613(a). Where the leave is due to a serious health condition of the employee that prevents him from performing his job, the requested certification is sufficient if it states the date upon which the serious

health condition began, the condition's probable duration, the appropriate medical facts regarding the condition within the health care provider's knowledge, and a statement that the employee is unable to perform his position's duties. 29 U.S.C. § 2613(b).

Brenneman, 366 F.3d at 421-22 (emphasis added). In reviewing a motion for summary judgment challenging an FMLA claim, the court must view the facts in a light most favorable to the plaintiff and determine whether the plaintiff complied with the FMLA notice requirements as a matter of law. Cavin, 346 F.3d at 723.

The sole notice issue raised by D/C is whether McQueen conveyed information to her employer D/C which was reasonably adequate to apprise D/C that McQueen was requesting leave for a serious medical condition that rendered her unable to perform her job. Brenneman, 366 F.3d at 421. D/C HR Director LaGarde explained at her deposition that, if a D/C employee such as McQueen called a "1-800" absenteeism phone number to report off work for five or more days for any medical reason, a "5-day" letter is automatically sent to the employee directing them to substantiate the reason to the Personnel Department. LaGarde March 8, 2006 Transcript, at 8. This "1-800" absenteeism number also directs the D/C employee to an ESIS phone number if the employee wants to make an S&A claim. Id. at 9. LaGarde testified that her office does not receive copies of ESIS letters sent to employees granting or denying S&A benefits, but that D/C does receive employee information from ESIS:

> A. [by LaGarde] On a daily basis [ESIS] send what's called SADI reports that will indicate when an employee has made a claim -- if the employee has called in, it will give you information; if they've submitted a claim, how long the claim is good for, or if the employee -- if there has been no medical information submitted or the information has expired.

Id. at 10. This information exchange from ESIS to D/C is verified by LaGarde's December

12, 2003 letter to McQueen explaining that McQueen had been absent from work since November 12, 2003, and that "[t]he reason for the absence from work . . . was established for a certain period, but has not been currently justified." Reading LaGarde's letter in a light most favorable to McQueen, McQueen's reason for being absent from November 12, 2003 up to the requested report date of December 19, 2003 had been justified *to LaGarde* for that "certain period." Yet, McQueen testified that she only provided medical information justifying her absence to ESIS, with Dr. Rosenberg faxing information to ESIS.

> Q.  And you followed up with ESIS to confirm that they had gotten [Dr. Rosenberg's information]?
>
> A.  [by McQueen] Yes.
>
> Q.  And then did you tell -- when you did that, did you remind ESIS to notify the plant employment office?
>
> A.  They said they had already done that.
>
> Q.  Okay.  And when was that?
>
> A.  I want to say December 17th -- 16th, 17th, or 18th, around that time.
>
> Q.  And that they had already notified the plant of what?
>
> A.  They said they had put in the system that my disability was justified by my physician.
>
> Q.  They put it in the system?
>
> A.  Yes.

McQueen January 10, 2005 Transcript, at 84-85. McQueen's testimony that Dr. Rosenberg faxed additional information to ESIS after receiving LaGarde's letter is corroborated by ESIS's December 19, 2003 letter stating that "your physician is certifying your disability through 12/21/2003[.]"

9

Construing the record evidence in a light most favorable to McQueen, a reasonable fact-finder could conclude that McQueen conveyed information to her employer D/C, through ESIS, which was reasonably adequate to apprise D/C that McQueen was requesting leave for a serious medical condition that rendered her unable to perform her job through December 21, 2003. Cavin, 346 F.3d at 723; Brenneman, 366 F.3d at 421. Initial information conveyed by McQueen to ESIS justified McQueen's absence from work from November 12, 2003 to December 19, 2003 *to D/C's LaGarde*; D/C has not proffered evidence that LaGarde received information from another source justifying McQueen's absence for this "certain period." Consistent with LaGarde's testimony, she received information from ESIS in the form of SADI reports which indicated that McQueen made a claim for S&A benefits, how long the claim was good for, and whether McQueen had submitted sufficient medical information. See LaGarde March 8, 2006 Transcript, at 10. Consistent with ESIS's December 19, 2003 letter confirming that Dr. Rosenberg had certified McQueen's disability through December 21, 2003, reasonable jurors could conclude that D/C's LaGarde received a corresponding SADI report from ESIS confirming that McQueen had justified her medical absence through December 21, 2003.

To achieve FMLA notice, McQueen was only required to convey information to D/C that she was requesting leave for a FMLA-qualifying reason, here being a "serious medical condition,"[1] that made McQueen unable to perform her job. Brenneman, 366 F.3d at 421.

---

[1] Others reasons include "birth of a son or daughter of the employee and in order to care for such son or daughter," "the placement of a son or daughter with the employee for adoption or foster care," or "to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious medical condition." 29 U.S.C. § 2612(a)(1)(A-C).

McQueen was not required to notify D/C that she was requesting *FMLA* leave, but only that she was requesting leave for an FMLA *qualifying reason,* recovery from a "serious medical condition." Id. Contrary to D/C's argument, McQueen was not required to request unpaid leave to invoke the protections of the FMLA. Id. Whether an employee is entitled to sick leave benefits is irrelevant to the employee's right to protection under the FMLA. Strickland v. Water Works and Sewer Bd. of the City of Birmingham, 239 F.3d 1199, 1202, 1205 (11th Cir. 2001) (holding that "an employer cannot escape liability under the Act for the period during which the employee, whose leave qualifies under the FMLA, is receiving his wages in the form of sick (or other) pay"). D/C could not justifiably assume that the FMLA did not apply because McQueen had applied for S&A benefits. Id. Levins' attestations that ESIS lacks authority to process FMLA leave requests and does not communicate FMLA leave request information to D/C does not preclude a finding that ESIS provided information to D/C's LaGarde that McQueen had and continued to request leave for a claimed serious medical condition of cellulitus. The issue is not ESIS's authority to grant or deny claims for FMLA leave, but whether a reasonable jury could find on this record that ESIS conveyed reasonably adequate information from McQueen to D/C apprising D/C of McQueen's leave requests for a serious medical condition that rendered her unable to perform her job. Brenneman, 366 F.3d at 421. The court answers that issue in the affirmative. Cavin, 346 F.3d at 723.

Levins' attestation that ESIS does not require proof of a "serious medical condition" to process a claim for S&A benefits is apparently made to convey the argument that McQueen's receipt of S&A benefits does not establish that McQueen was suffering from a "serious medical condition" as defined under the FMLA. Even if this conclusionary

11

attestation is true, it also follows that McQueen's receipt of S&A benefits does not preclude a finding that McQueen was suffering from a FMLA-qualifying "serious medical condition" throughout the entire relevant time period. Strickland, 239 F.3d at 1202, 1205. Record evidence permits an inference that LaGarde herself found McQueen had justified her medical absences through December 19, 2003 based on information McQueen provided solely to ESIS, and that the Plant Employment Office received supplemental information regarding McQueen's leave requests and medical condition from ESIS for the period December 19, 2003 through December 21, 2003. Henegar is distinguishable on its facts, as the record reflects McQueen did more than simply communicate to D/C through ESIS that she was "ill." See Henegar, 280 F.Supp.2d at 686. To the extent D/C argues LaGarde's December 12, 2003 letter constituted a request for certification from McQueen's health care provider under § 2613(a), a reasonable jury could find that McQueen complied with the request by faxing Dr. Rosenberg's certification to ESIS, and informing D/C through ESIS's updated SADI report, of the date on which McQueen's serious medical condition of began, the condition's probable duration, appropriate medical facts within Dr. Rosenberg's knowledge, and a statement that McQueen would be unable to return to work from December 19, 2003 through December 21, 2003. See Brenneman, 366 F.3d at 422. Further, construing LaGarde's December 12, 2003 letter as a request for § 2613(a) certification would imply that D/C received adequate FMLA notice from McQueen prior to December 12, 2003.

D/C agrees that "employers cannot deny FMLA leave on grounds that an employee failed to comply with internal procedures - as long as 'the employee gives timely verbal or other notice.'" Walton v. Ford Motor Co., 424 F.3d 481, 486 (6th Cir. 2005) (quoting Cavin,

346 F.3d at 722 (quoting 29 C.F.R. § 825.302(d))).  The fact that McQueen had previously filed formal FMLA leave requests with LaGarde does not prevent McQueen from proving that she otherwise provided D/C with FMLA notice during the period of time at issue here.

### V. Conclusion

A question of fact remains whether D/C received adequate FMLA notice.  Accordingly, McQueen will proceed to trial on her FMLA interference and retaliation claims, where she will be required to prove all of the elements of her claims.

D/C's motion for summary judgment is hereby GRANTED, IN PART, as to McQueen's claims under the PWDCRA.  McQueen's PWDCRA claims are hereby DISMISSED with prejudice.  D/C's motion for summary judgment is hereby DENIED as to McQueen's FMLA claims.

SO ORDERED.

                                        s/George Caram Steeh  
                                        GEORGE CARAM STEEH  
                                        UNITED STATES DISTRICT JUDGE

Dated:  July 20, 2006

                          CERTIFICATE OF SERVICE  
Copies of this Order were served on the attorneys of record on July 20, 2006, by electronic and/or ordinary mail.

                                        s/Josephine Chaffee  
                                        Secretary/Deputy Clerk